UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20108-ALTONAGA

UNITED STATES OF AMERICA,　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　:
ARTURO ESCOBAR DOMINGUEZ,　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　Defendant.　　　　　　　　:
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .:

## SENTENCING MEMORANDUM

The Defendant, ARTURO ESCOBAR DOMINGUEZ, through undersigned counsel, submits this memorandum in aid of sentencing. For the reasons explained *infra*, it is respectfully requested that this Court impose a sentence lower than the advisory guideline range set forth in the Presentence Investigation Report as such a sentence would be "sufficient, but not greater than necessary" to comply with the goals of sentencing. *See* 18 U.S.C. § 3553(a).

## INTRODUCTION

On March 28, 2018, Mr. Escobar Dominguez pled guilty in this matter to Conspiracy to Commit Money Laundering. (DE 16). Specifically, Mr. Escobar Dominguez participated in a scheme to launder bribes to secure contracts with PetroEcuador, the country's state-owned oil company. This Court is now presented with the unenviable task of imposing a sentence that gives fair weight to "the history and characteristics of the defendant" while being "sufficient, but not greater than necessary" to serve the statutory

purposes of federal sentencing. 18 U.S.C. § 3553(a)(2).

Arturo Escobar Dominguez is 34 years old. Until this matter, he resided in Sunrise, Florida, with his wife, Gabriela Alejandra Pazmino Jaramillo and their two minor children, Juan Martin Escobar, (age 3) and Joaquin Alejandro Escobar, (age 2) after fleeing Ecuador. With respect to his commission of the instant offense, it is undisputed that Mr. Escobar Dominguez is guilty and has accepted responsibility for what he has done. Mr. Escobar Dominguez has made amends by cooperating with the Government extensively.[1]

There is no doubt that Mr. Escobar Dominguez has been significantly punished for his involvement in the instant offense. Mr. Escobar Dominguez is in the United States (after fleeing Ecuador) residing with his wife and minor children and has no other family here to rely on or be of assistance once he is incarcerated. He will eventually be deported back to Ecuador due to this conviction where he will be facing incarceration, the risk that additional charges will be filed, and the risk of being killed due to his cooperation in the United States. He will be unable to remain an active presence in his minor children's lives. Additionally, this case and this Defendant are unique in that the Defendant used the vast majority of his bribe money long before the commencement of a criminal investigation and/or prosecution to make charitable contributions to various organizations throughout Ecuador.

Accordingly, this sentencing memorandum is offered to assist the Court in fashioning a just sentence for Arturo Escobar Dominguez. Nothing set forth is offered as

---

[1] The undersigned is precluded from requesting a variance pursuant to Mr. Escobar Dominguez's cooperation but is nevertheless bringing it to the Court's attention.

an excuse for the actions that bring Mr. Escobar Dominguez before the Court, but only to provide the Court with a complete picture of Mr. Escobar Dominguez's life.  In assessing what sentence is reasonable under 18 U.S.C. § 3553(a), and given the totality of the circumstances, Mr. Escobar Dominguez respectfully requests that this Court impose a sentence lower than the advisory guideline range set forth in the Presentence Investigation Report as such a sentence would be both reasonable and sufficient.  In doing so, Mr. Escobar Dominguez respectfully requests this Court to consider his personal background (including his outstanding record of supporting needy organizations) in making its determination at sentencing.

## **CONTROLLING LEGAL PRINCIPLES**

In *Rita v. United States*, 551 U.S. 338 (2007), the United States Supreme Court explained the process and substantive standards that govern sentencing in the post-*Booker* landscape:

> The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. He may hear arguments by the prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect [18 U.S.C.] § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless . . . [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.

*Id.* at 351. (citations omitted).

*Rita* made clear that a sentencing judge must independently determine what sentence would be appropriate and should not presume that a sentence within the Guidelines range satisfies the requirements of § 3553(a). Accordingly, while the Court

may consider the Presentence Investigation Report and the reasoning that underlies the Guidelines, the sentence ultimately must reflect the Court's own assessment of the sentence that is required under § 3553(a). And the command of § 3553(a) is clear: consistent with the principle of parsimony, the sentence must be "sufficient, but not greater than necessary" to comply with the purposes set forth in § 3553(a)(2).

The United States Supreme Court has reaffirmed this as the hallmark of current federal sentencing practice: reasoned judicial discretion based on the individual circumstances of each case. *See, e.g. Peugh v. United States*, 569 U.S. 476 (2013) (slip op. at 10). Thus, while "a district court 'should begin all sentencing proceedings by correctly calculating the applicable Guidelines range' . . . [t]he district court 'may not presume that the Guidelines range is reasonable.'" *Id.* at 5. (*quoting Gall v. United States*, 552 U.S. 38, 49 (2007)). Accordingly, the district court "'may in appropriate cases impose a non-Guidelines sentence based on disagreement with the [Sentencing] Commission's views.'" *Id.* at 5. (*quoting Pepper v. United States*, 562 U.S. 476, (2011)(slip op. at 23) (*citing Kimbrough v. United States*, 552 U.S. 85, 109-110 (2007)).

Of course, "a district court's decision to vary from the advisory Guidelines may attract greatest respect when 'it is based on the particular facts of the case.'" *Peugh v. United States*, 569 U.S. 476 (2013) (*quoting Kimbrough*, 552 U.S. at 109). Accordingly, Mr. Escobar Dominguez may argue that a different sentence is appropriate regardless of the recommended guideline. *Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough*, 552 U.S. at 109. This is for several reasons.

While the Guidelines focus almost exclusively on the harm caused by the offense of conviction, they give virtually no weight to the "history and characteristics of the

defendant," which Congress instructs the sentencing court to consider equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Indeed, no section of the Guidelines used to calculate offense level addresses these characteristics, and the sentence computation as a whole does not take into account the full scope of the offender's "history and characteristics." *See Rita v. United States*, 551 U.S. 338, 364-65 (2007) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines.").

With that in mind, undersigned urges the Court to employ fair and due consideration to the characteristics mentioned *infra* that weigh in favor of a mitigated sentence in this case.

## LEGAL AND FACTUAL BASES FOR SENTENCE NOTWITHSTANDING THE ADVISORY GUIDELINE RANGE

**Mr. Escobar Dominguez's Outstanding Record of Supporting Charitable Organizations:**

This matter is unique in that Mr. Escobar Dominguez spent and disposed of the ill-gotten gains by making many charitable contributions. The plethora of letters that are attached demonstrate Mr. Escobar Dominguez's charitable efforts. *See* Exhibit A. Mr. Escobar Dominguez used a vast majority of the bribe money long before the commencement of a criminal investigation and/or prosecution for charitable donations. These gifts were not intended to buy the influence of public officials nor used as an instrument for political proselytizing and were not gifts to obtain or maintain a business

advantage in the procurement of public contracts with anyone, including the Ecuadorian government.

Mr. Escobar Dominguez provided financial assistance to many organizations in the Ecuadorian city of Quito and throughout Ecuador.  As the letter from Sister Amalia Guerrero Tapia relates, because of Mr. Escobar Dominguez's monetary donation, a "welfare project consisting of 6 double bedrooms, 2 master bedrooms, an area for physical therapy and a small recreation park" was developed for an organization that cares for the elderly.  *See* letter attached as Exhibit A.

Additionally, there are various letters received from different organizations where Mr. Escobar Dominguez donated either food products or supermarket gift cards to feed impoverished children or the elderly.  *See* letters attached as Exhibit A.

The letter from Tania Armijo describes a donation by Mr. Escobar Dominguez of $19,980.00 in supermarket vouchers for an organization that helps vulnerable individuals and formally thanks him. *See* letters attached as Exhibit A.

Additionally, Mr. Escobar Dominguez made various donations to organizations that treated children with cleft lips or a cleft palate, craniofacial anomalies and other diseases.  *See* letters attached as Exhibit A and photographs.  Mr. Escobar Dominguez also provided assistance after an earthquake devastated the town of Manabi and Esmeraldas in April of 2016.  *See* letters attached as Exhibit A.

As the above summary describes and as the letters attest, Mr. Escobar Dominguez's natural disposition is to help people.  Mr. Escobar Dominguez voluntarily gave back or spent the bribe money to help others.  He has supported organizations throughout Ecuador that are working to improve the lives of the less fortunate.

Additionally, Mr. Escobar Dominguez did this quietly and without publicity.

**Mr. Escobar Dominguez's Personal Background:**

Mr. Escobar Dominguez was born on January 14, 1984, in Quito, Ecuador. He was raised in a stable and nurturing household. His father, Arturo Alfredo Escobar Trivino is an attorney and his mother, Gladys Narcisa Dominguez is a housewife. His parents are aware of his legal predicament and remain supportive.

Mr. Escobar Dominguez married Garbiela Alejandra Pazmino Jaramillo on October 18, 2013, and two children were born from this union: Juan Martin Escobar, age three, and Joaquin Alejandro Escobar, age two. Joaquin suffers from chronic allergic rhinitis and reactive airway disease and requires the constant use of an inhaler to assist in reducing airway inflammation and improve his breathing.

Mr. Escobar Dominguez and his wife fled Ecuador for the United States in May of 2016. They currently reside in Sunrise, Florida with their two children. They have no family or friends that reside in the United States. Because of their immigration status, Mr. Escobar Dominguez and his wife have been unable to secure employment. Accordingly, Mr. Escobar Dominguez's focus is currently on raising his two minor children. Indeed, Mr. Escobar Dominguez is a dedicated parent and exemplary father whose children benefit daily from having him in their lives. In addition to his responsibilities as a father of his two young children, he is also deeply committed to being a husband to his wife, Mrs. Pazmino Jaramillo.

It will cause tremendous hardship for Mr. Escobar Dominguez's wife and minor children if he is sentenced to a lengthy period of incarceration. Indeed, Mrs. Pazmino Jaramillo will be faced with having to decide whether or not to return to Ecuador (and face

retribution due to her husband's cooperation here in the United States) or remain by herself with the minor children in the United States. Mr. Escobar Dominguez is deeply worried about the fate of his two minor children and how the separation from him will have a profoundly negative impact on their lives at a time when they need the stability of their father's presence.

Numerous life-long friends and family members have written letters to the Court to express their strong support for Mr. Escobar Dominguez and a collective request for mercy and clemency in recognition of his many positive characteristics, great potential, and for the way he chose to give back, spend, and dispose most of the bribe money. [2]

Indeed, Mr. Escobar Dominguez has scores of family members and friends who have written this Court. He's been described as "always caring about others" and from "an early age" helping others by "doing charitable works, donations, etc." by his father, Arturo Alfredo Escobar Trivino. His father further states that Mr. Escobar Dominguez was sincere and admitted his wrongdoing to his father and that he always stood out as being "an honest, serious, good student and great professional when he was able to exercise his career both in public and private fields."

Luis Humberto Pazmino Echeverria describes Mr. Escobar Dominguez as a "good young man of nature, simply, very respectful of [his] whole family, sociable and sensitive" and "[l]oyal and gentlemanly" as well as a "good companion and friend."

His stepmother, Mariela Pola Ruiz Pazmino states that Mr. Escobar Dominguez is a "wonderful father who was wrong, but he regrets it and has already suffered enough

---

[2] The letters mentioned in this memorandum will be filed via separate filing.

with all this."

His sister-in-law Daniela Estefania Pazmino Jaramillo describes Mr. Escobar Dominguez as "a very attentive person, very generous with others, with a simple personality, and always concerned about his Mother."

His brother-in-law, Nicolas Pazmino Jaramillo, describes Mr. Escobar Dominguez as an "older brother" who "accompanied him" everywhere and who was always "very generous."  He further states how Mr. Escobar Dominguez bought "Christmas gifts for many children of the Fatima Church in Quito" and how he "helped Operation Smile a lot to make the lives of hundreds of children change."

Mr. Escobar Dominguez's mother-in-law, Alicia del Carmen Jaramillo Real states that Mr. Escobar Dominguez is not a "malformed person, with badness, bad habits" and he is "quite the contrary."

Mr. Escobar Dominguez's cousin, Edgar Manuel Escobar Ruiz, describes him as a "great person, with pure and good feelings, with whom I can always count on" and who "likes helping those who are in need, without hoping for something in exchange."

Veronica Fernanda Pinto Leon, who is married to Mr. Escobar Dominguez's cousin, describes it being "a great surprise" and how she "couldn't believe it" when Mr. Escobar Dominguez was charged in this matter because he is a person of "values, firm, honest, solidary, and always close to his family."

Sebastian Mata Navas, Mr. Escobar Dominguez's friend states that he is "a good loving, responsible and collaborative father" and that it would "be very negative for his children the absence of his father."

With respect to his commission of the instant offense, it is undisputed that Mr.

Escobar Dominguez is guilty and has accepted responsibility for what he has done. Mr. Escobar Dominguez has cooperated extensively with the Government. The conviction in this case will result in Mr. Escobar Dominguez's deportation back to Ecuador where he will face incarceration, the possible filing of additional charges, and retribution for his cooperation here in the United States.

**I.     The § 3553(a) Factors Counsel in Favor of a Sentence Lower than the Advisory Guideline Range**

Of course, before imposing a sentence upon Mr. Escobar Dominguez, this Court will consider the § 3553(a) factors. Section § 3553(a)(2) addresses the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with education or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(A)-(D). This Court will also consider the nature and circumstances of the offense, the history and character of the defendant, and the kinds of sentences available. *See Id.* at § 3553(a)(1), (3)-(4).

Beyond whatever sentence the Court imposes, Arturo Escobar Dominguez has been punished and will continue to be punished as a result of the conduct that brings him before the Court for sentencing. In light of all the factors mentioned *supra*, the fact that Mr. Escobar Dominguez lead a productive life as a contributing member of society for many years prior to these events, the fact that he has done all that he can to make amends (including all of the charitable contributions that he has made), the Court is urged to

employ fair and due consideration to the characteristics mentioned *supra* that weigh in favor of a mitigated sentence in this case.

## **CONCLUSION**

For the reasons set forth herein, it is respectfully requested that this Court impose a sentence lower than the advisory guideline range in this matter.

      Respectfully submitted,

      **Law Offices of Paul D. Petruzzi, P.A.**
      169 East Flagler Street
      Suite 1241
      Miami, FL 33131
      Telephone: (305) 373-6773
      Facsimile:   (305) 373-3832
      E-mail: petruzzi-law@msn.com

      By:    <u>/s/ Paul D. Petruzzi</u>
              **PAUL D. PETRUZZI, ESQ.**
              Florida Bar No. 982059

      Beatriz D. Vazquez, Esq.
      **Law Offices of Paul D. Petruzzi, P.A.**
      169 East Flagler Street
      Suite 1241
      Miami, FL 33131
      Telephone: (305) 373-6773
      Facsimile:   (305) 373-3832
      E-mail: petruzzi-law@msn.com

      By:    <u>/s/ Beatriz D. Vazquez</u>
              **BEATRIZ D. VAZQUEZ, ESQ.**
              Florida Bar No. 1002875

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 25, 2018, a true and correct copy of the foregoing was furnished to the Assistant United States Attorney assigned to this matter via e-mail.

          By:    /s/ Paul D. Petruzzi
                     **PAUL D. PETRUZZI, ESQ.**
                     Attorney for Defendant

          By:    /s/ Beatriz D. Vazquez
                     **BEATRIZ D. VAZQUEZ, ESQ.**
                     Attorney for Defendant